**Rita S. WHITE, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Original Defendant and Third-Party Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Third-Party Defendant.**

**Civ. A. Nos. 65–C–5–A, 65–C–11–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

July 20, 1965.

2

Leslie M. Mullins, and William J. Sturgill, Greear, Bowen, Mullins, Winston, Pippin & Sturgill, Norton, Va., for plaintiff.

William B. Poff, Woods, Rogers, Muse & Walker, Roanoke, Va., for Nationwide Mut. Ins. Co.

Francis W. Flannagan, Flannagan & Flannagan, Bristol, Va., and Frank Winston, Curtin, Hayes & Winston, Bristol, Tenn., for Allstate Ins. Co.

DALTON, Chief Judge.

Plaintiff, Rita S. White, instituted this action to recover damages for injuries which she sustained as a result of an automobile accident. The controversy centers around Virginia's Uninsured Motorist Statute. (Va.Code Ann. § 38.1–381 (Supp.1964)). The pertinent facts are not in dispute.

On November 17, 1963, the plaintiff, Rita S. White, was a passenger in an automobile which was owned and operated by one Daisy P. Long. The accident occurred in Scott County, Virginia, when Miss Long's vehicle was struck and forced from the road by another vehicle operated by Jack L. Morrison of Blountville, Tennessee.

The vehicle driven by Morrison was covered by a policy of automobile liability insurance issued in Tennessee by Allstate Insurance Company, hereinafter referred to as Allstate. The limits of that policy were $10,000 per person and $40,000 per accident. On December 11, 1963, a proof of insurance form (SR–21) was filed by Allstate with the Virginia Commissioner of Motor Vehicles in an effort to comply with Va.Code Ann. § 46.1–451. The form indicated Morrison had limits of liability insurance at least equal to those required by the Virginia Financial Responsibility law ($15,000 per person, $30,000 per accident).

Miss Long after the accident notified her insurer, Nationwide Mutual Insurance Company, hereinafter referred to as Nationwide. An investigation ensued and certain medical expenses of plaintiff were paid under Miss Long's policy.

The facts show that plaintiff was at the time of the accident residing at the home of her father, Add D. Sizemore in Dickenson County, Virginia. The facts also show that Nationwide had issued an automobile liability insurance policy to Mr. Sizemore which was in effect at the time of the accident. It was under the uninsured motorist endorsement of this policy which plaintiff was to later make claim.

On May 5, 1964 plaintiff, alleging serious and permanent injuries, filed a motion for judgment in the Circuit Court of Dickenson County, Virginia, against Morrison as tortfeasor. Learning later that the liability insurance on Morrison's vehicle was not equal to that required by Virginia law, plaintiff on June 18, 1964 sent Nationwide an affidavit that she was relying on the uninsured motorist provision of her father's policy. A copy of the notice of motion for judgment was served on Nationwide June 25, 1964.

Trial of the case of White v. Morrison was begun on October 20, 1964. A judgment was recovered by plaintiff on October 21, 1964 in an amount of $22,000 with interest at the rate of six per cent per annum to run from the date of judgment, with costs in an amount of $121.50.

When Miss White was unable to collect on her judgment against Morrison, she brought two actions in the Circuit Court of Dickenson County on January 1, 1965. One action was instituted against Allstate to recover $22,121.50 plus interest from the date of judgment and another was brought against Nationwide to recover $15,121.50 with interest.

After removal by Nationwide and Allstate to this Court, the cases were consolidated for trial. Nationwide was permitted by leave of Court to file a third-party complaint against Allstate.

Allstate then paid into Court $10,215.60 claiming payment in full to the plaintiff under its policy covering Morrison, the limit of that policy being $10,000 per person. This Court ordered that amount paid to plaintiff, without prejudice, on February 16, 1965.

 The Court first considers whether plaintiff was a member of her father's household so as to come under the coverage of the policy issued her father. The policy issued Sizemore by Nationwide defines "insured" thusly:

"The unqualified word 'Insured' means (1) the Named Insured and, while residents of the same household, his spouse, and the relatives of either;"

Plaintiff went to stay with her parents on August 15, 1963, and she remained with them until her husband, who had matriculated at East Tennessee State University, rejoined her in June of 1964. During that time plaintiff ate, slept, and lived at the home of her parents. Her relationship to her family was, she observed in testimony, the same as before she was married. She dwelled under their roof and was a member of their family. See Johnson v. State Farm Mut. Auto. Ins. Co., 252 F.2d 158 (8th Cir. 1958); Rathbun v. Aetna Cas. & Sur. Co., 144 Conn. 165, 128 A.2d 327 (1956); Lontkowski v. Ignorski, 6 Wis.2d 561, 95 N.W.2d 230 (1959). In light of the maxim that policy provisions are to be construed in favor of the insured, one might be held a member of a household within a provision extending coverage, though not for purposes of policy exclusion. See Annot., 50 A.L.R.2d 120 n. 1 (1956). The purpose of the policy provision in the case at bar was one of inclusion; the evidence is strongly in support of the conclusion that plaintiff was a member of the household of her father, and this Court so finds.

The next question presented is whether adequate or timely notice was given by plaintiff to Nationwide of her intent to rely on the uninsured motorist provision of her father's policy so as not to violate the terms of that policy calling for notice "as soon as practicable". Timely notice is a condition precedent to the right of recovery and the burden of showing such notice is on the insured. Temple v. Virginia Auto. Mut. Ins. Co., 181 Va. 561, 25 S.E.2d 268 (1943). On the other hand it is not always necessary that notice come directly from the insured, nor must it be given immediately after an accident, for the words "as soon as practicable" are broadly construed and time limits have been extended considerably in many instances. Home Indemnity Co. v. Ware, 183 F.Supp. 367 (D.Del.1960). This is especially true where prejudice to the insurer is lacking.

The purpose of the policy provision calling for prompt and timely notice is twofold: (1) It is to afford the insurer opportunity to make reasonable investigation and (2) to enable the insurer to adequately prepare a defense, if that be necessary.

The facts show that one day following the accident, Miss Long, the driver of the vehicle in which plaintiff was a passenger, notified her insurance company, Nationwide, of the accident and of the injuries sustained by plaintiff. An investigation was made by Nationwide at that time. Since, Nationwide received actual notice there was no prejudice in that regard.

Motion for judgment against defendant, Morrison, was filed on May 5, 1964. Despite reasonable diligence by counsel for plaintiff, no discovery that the limits of liability insurance of Allstate were less than required by the Virginia Financial law was made until approximately one month later. (Va.Code Ann. § 46.1–1(8)).

Within 10 days of learning this fact counsel for plaintiff notified the registered agent of Nationwide that he was relying on the uninsured motorist provision of Sizemore's policy and Nationwide received an affidavit to this effect on June 18, 1964. A copy of process was served on the registered agent of Nationwide on June 25, 1964 in the manner set forth by Va.Code Ann. § 38.1–381(e) (I). In fact, Nationwide had approximately four months in which to investigate and to prepare a defense. The case was not tried until October 20, 1964. The purpose of the policy provision was satisfied.

In the instant case, it does not appear that Nationwide was materially prejudiced, and it appears that the plaintiff acted with reasonable diligence. All the surrounding circumstances must be looked to, not the mere time lapse alone. 13 Couch on Insurance, Second Edition § 49:120. Failure to give prompt notice to vitiate a contract must be material. In this case prejudice was neither material nor substantial.

A determination must be made as to whether the filing of the SR–21 form

pursuant to Va.Code Ann. § 46.1–451 by Allstate estops Allstate from asserting that its policy insured Morrison only to the extent of $10,000.

We regard to the purpose of the form, Carrico, V., stated in Virginia Farm Bureau Mut. Ins. Co. v. Saccio, 204 Va. 769, at 781, 782, 133 S.E.2d 268, 276 (1963).

"Thus, if there is a policy applicable to the liability, if any, of an operator involved in an accident, the SR–21 form serves the purpose of so advising the Division of Motor Vehicles so that such operator will not be required to furnish security or suffer the suspension of his license and registration. On the other hand, if there is a policy, but it does not afford coverage in the manner and to the extent required by Code, § 46.1–450, then the carrier, by the SR–21 form, advises the Division of Motor Vehicles that this policy is not applicable to liability, if any, and the Division is free to invoke the provisions of Code, § 46.1–449.

We are of opinion that the legislature had no other intention with respect to the purpose to be served by the SR–21 form. Had there been an intention to make absolute the liability of a carrier to its insured when loss or damage covered by the policy occurs and the SR–21 form is filed, the legislature would surely have so stated. As has been previously noted, the legislature has clearly expressed such an intention with respect to certified policies issued pursuant to the Safety Responsibility Act. If, following certification of a policy issued under the Act, loss or damage covered thereby occurs, the liability of the carrier to the insured is absolute. Code, § 46.1–511. But in language just as clear the legislature has said that this provision shall not apply to any policy except one so certified. Code, § 46.1–509. We cannot read into the statute requiring the filing of the SR–21 form the language of the statute fixing absolute liability under a certified policy."

The (SR–21) Proof of Insurance Form.

(Copy)

AAMVA UNIFORM
FINANCIAL RESPONSIBILITY FORM

Official Use Only

18R01499 dent ............ 11/17/63 ............
Place of Accident ............ Gate City, Va. ............

| Year of Model | Trade Name | Model | Body Type | Identification No. |
|---|---|---|---|---|
| 55 | Chevrolet | | | C555011077 |

Description of Vehicle Involved in Accident (Not required if Operator's Policy)

OWNER ...... Arch Morrison, Rt 1, Blountville, Tenn
OPERATOR ............ Jack Morrison, Same

The company signatory hereto gives notice that its policy numbered ...... 55 795 250 ......
issued to ........ XXXXXXXXXXXXXX Owner ............
is an automobile liability policy providing limits of liability at least equal to the limits required by the financial responsibility laws of this state, which policy was in effect on the date of the above described accident.

Does this policy apply to the above owner? Yes ☒ No ☐ Above operator? Yes ☒ No ☐

............ Va. ............ SR–21 FINANCIAL RESPONSIBILITY NOTICE OF POLICY
(State)

Allstate Insurance Company

By ............
Signature of Authorized Representative

Date ............
U 2730 PRINTED IN U S A. (This copy will be returned to the address shown on reverse side.)
11/27/63

Thus, it seems to be the view of the Virginia Court that the main purpose of the SR–21 form is for the information of the Division of Motor Vehicles so that they may act accordingly in revoking driving privileged. It is not meant to be relied on by insurance carriers. Although the language in the Saccio case limits it to that particular set of facts, the principle is not so limited. For a case which follows Saccio, see Insurance Co. of North America v. Atlantic Nat. Insurance Co., 329 F.2d 769 (4th Cir. 1964). In view of the aforementioned cases, namely, Saccio and Insurance Co. of North America v. Atlantic Nat. Ins. Co., the Court is unable to regard Nationwide's reliance on the SR–21 form vital.

Estoppel arises when a false representation is made by one to another on which the latter reasonably relies to his detriment. See Knapp v. Independence Life & Acc. Ins. Co., 146 W.Va. 163, 118 S.E.2d 631 (W.Va.1961); 16 Appleman, Insurance Law and Practice, § 9088; 6 Couch on Insurance, Second Edition, § 32:270; 32:271; 32:272; Vance on Insurance, Third Edition, Chapter 9, § 88. Reasonable reliance in estoppel is important. Nationwide may have been privileged to rely on the form for company reasons, but it was certainly not entitled to with respect to the rights of third parties. It may well be economically advantageous and practical for insurance companies to rely on the SR–21 form, for they cannot investigate all uninsured motorist claims. In the instant case, however, Nationwide's reliance was not reasonable under the circumstances. Nationwide, at the least, should have been put on inquiry by the apparent conflict between the SR–21 form and the notice it received from plaintiff as to coverage.

Next under consideration by the Court is the amount of plaintiff's recovery. Va. Code Ann. § 38.1–381(c) defines an uninsured motor vehicle as:

" * * * a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1–1(8), as amended from time to time * * *."

The "amount specified" was $15,000 per person and $30,000 per accident. Since the limit of Morrison's liability insurance was $10,000 per person, his vehicle did by statutory definition come under that section of the Code defining the uninsured motor vehicle. Hence recovery was sought by plaintiff under her father's policy. This policy was controlled by Va. Code Ann. § 38.1–381(b) which provides that the insurer must undertake " * * to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle * * *" within the policy limits (i. e. $15,000 per person). The statute expressly says that "all sums" shall so be paid.

It should be noted that the insurer's liability under the uninsured motorist provision is contractual in nature. Moreover, the Court is mindful that the purpose of the uninsured motorist law was to benefit injured parties, and liberal construction has been accorded that law with a view to the stated purpose. See Storm v. Nationwide Mut. Ins. Co., 199 Va. 130, 97 S.E.2d 759, 69 A.L.R.2d 849 (1957).

Plaintiff already having collected $10,-215.60 from Allstate now seeks recovery of the unpaid part of its judgment, $12,-000 plus interest and costs, from Nationwide. Nationwide argues that it, at most, should be liable only for $5,000, the difference between Allstate's policy with the defendant and the limits of its own policy.

The recent case of Bryant v. State Farm Mutual Auto. Ins. Co., 205 Va. 897, 140 S.E.2d 817 (1965) seems controlling despite Nationwide's argument to the contrary. In that case the Court at page 901, 140 S.E.2d at page 820 said:

"The limit of the recovery of the plaintiff under any or all insurance policies carrying the uninsured motorist provision required by § 38.1–381(b) would be the amount of the insured's judgment against the uninsured motorist."

The Court is of the opinion that in the instant case the full limits of Nationwide's policy are available to satisfy the unpaid part of the judgment.

Virginia Code Annotated § 38.1–381(f) as amended provides:

"Any insurer paying a claim under the endorsement or provisions required by paragraph (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid *against the person causing such injury,* death or damage to the extent that payment was made; * * *." (Emphasis Supplied)

The rights of subrogation are against the tortfeasor not against another insurance company. The insurer, after payment to the insured, maintains all his rights against the uninsured motorist. Nationwide's rights will arise after payment is made. It can then determine the extent of the tortfeasor's assets and proceed accordingly. Nationwide's rights of subrogation against Morrison will not be damaged in toto as it claims.

For the foregoing reasons the Court is of the opinion that Morrison was an uninsured motorist under statute, that timely notice was given Nationwide Mutual Insurance Company, and that Nationwide is liable in an amount of $12,000 plus interest and costs to plaintiff, Rita S. White.

An order will be entered to this effect.